1  Jonathan M. Genish (State Bar No. 259031)
   jgenish@blackstonepc.com
2  Barbara DuVan-Clarke (State Bar No. 259268)
   BDC@blackstonepc.com
3  P.J. Van Ert (State Bar No. 234858)
   pjvanert@blackstonepc.com
4  Annabel F. Blanchard (State Bar No. 258135)
   ablanchard@blackstonepc.com
5  
6  **BLACKSTONE LAW, APC**
   8383 Wilshire Boulevard, Suite 745
7  Beverly Hills, California 90211
   Telephone: (310) 622-4278/ Fax: (855) 786-6356
8  
9  *Attorneys for* Plaintiff Steven Keller

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12  STEVEN KELLER, individually, and      | Case No.: 2:23-cv-00515-SVW-MAA
13  on behalf of others similarly situated;

14              Plaintiff,                  | Honorable Stephen V. Wilson
                                              Courtroom 10A
15         vs.

16  CVS PHARMACY, INC.;                   | **CLASS ACTION**
17  GARFIELD BEACH CVS, LLC;
    CVS HEALTH CORPORATION; and           | **PLAINTIFF'S NOTICE OF MOTION
18  DOES 1 through 100, inclusive,          AND MOTION FOR PRELIMINARY
                                            APPROVAL OF CLASS ACTION
                Defendants.                 SETTLEMENT; MEMORANDUM
                                            OF POINTS AND AUTHORITIES IN
19                                          SUPPORT THEREOF**

20                                          [Declaration of Proposed Class Counsel
                                            (Barbara DuVan Clarke); Declaration of
21                                          Proposed Class Representative (Steven
                                            Keller); and [Proposed] Order filed
22                                          concurrently herewith]

23                                          Date:
                                            Time:
24                                          Department:        10A

25                                          Complaint Filed:   December 20, 2022
                                            Removed:           January 24, 2023
26                                          FAC Filed:         April 7, 2023
                                            Trial Date:        None Set
27

28

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on a date and time to be determined, this matter shall come on for hearing before the Honorable Stephen V. Wilson in Courtroom 10A of the United States District Court for the Central District of California, located at the First Street Courthouse, 350 W. 1st Street, Courtroom 10A, 10th Floor, Los Angeles California 90012, Plaintiff Steven Keller ("Plaintiff") will and hereby does move for an order:

- Granting preliminary approval of the proposed class action settlement described herein and as set forth in the parties' Class Action Settlement Agreement and Release ("Settlement," "Agreement," or "Settlement Agreement"), attached as "**EXHIBIT 1**" to the Declaration of Barbara DuVan Clarke in Support of Plaintiff's Motion for Preliminary Approval of Class Action Settlement, including the means of allocation and distribution of the Gross Settlement Amount and the Net Settlement Amount, and the allocations for Class Counsel's attorneys' fees and litigation costs, the Class Representative's Service Enhancement, penalties under the Private Attorneys General Act, and Settlement Administration Expenses;

- Certifying the proposed Class for settlement purposes only;

- Preliminarily appointing Plaintiff Steven Keller as Class Representative;

- Preliminarily appointing Jonathan Genish, Barbara DuVan Clarke, and P.J. Van Ert of Blackstone Law, APC as Class Counsel;

- Approving the proposed Notice of Class Action Settlement ("Class Notice"), attached as "**EXHIBIT A**" to the Proposed Order;

- Appointing Apex Class Action Administrators as the Settlement Administrator to handle the notice and administration process for the Settlement and preliminarily approving Settlement Administration Costs;

- Directing the Settlement Administrator to mail the Class Notice to the proposed Class;

1

- Approving the proposed deadlines for the notice and administration process as reflected herein and in the Settlement Agreement; and
- Scheduling a hearing to consider final approval of the Settlement, at which time the Court will also consider whether to grant final approval of the requests for an award of the Class Counsel's attorneys' fees and litigation costs, the Class Representative's Service Enhancement, and Settlement Administration Expenses.

This motion is based upon the following memorandum of points and authorities; the Settlement Agreement; the Declaration of Proposed Class Counsel (Barbara DuVan-Clarke) and Proposed Class Representative (Steven Keller) in support thereof; as well as the pleadings and other records on file with the Court in this matter, and such evidence and oral argument as may be presented at the hearing on this motion.

Dated: December 16, 2024          **BLACKSTONE LAW, APC**

By: _____

Barbara DuVan-Clarke
*Attorneys for* Plaintiff

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# TABLE OF CONTENTS

I.     SUMMARY OF MOTION ..................................................................... 1

II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND ............... 2

III.   SUMMARY OF THE SETTLEMENT TERMS ................................... 3

     A.    The Class for Settlement Purposes ........................................... 3

     B.    Essential Terms of the Settlement ............................................. 4

     C.    Calculation of Individual Settlement Shares ........................... 5

     D.    Request for Exclusion, Notice of Objection, and Workweeks Dispute Procedures ................................................................... 6

     E.    Scope of the Release .................................................................. 7

IV.   THE LEGAL STANDARD FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT ........................................ 9

V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED ...................................................................................... 10

     A.    The Settlement Resulted from Arm's Length Negotiations and Extensive Investigation and Discovery .................................. 10

     B.    The Settlement Is Fair, Reasonable, and Adequate ............... 12

     C.    The Settlement Is of Significant Value and Within the Range of Approval ............................................................................. 14

         1.    The allocation for the Class Representative Service Enhancement is reasonable ............................................. 14

         2.    The allocations for the Attorneys' Fees and Costs are reasonable ...................................................................... 15

VI.   CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE UNDER RULE 23 .......................................................... 17

     A.    Numerosity ............................................................................. 18

     B.    Commonality ........................................................................... 18

     C.    Typicality ................................................................................ 19

i

D.    **Adequacy of Representation** .................................................**19**

    1.    *Appointment of Class Representative.* ..........................................*19*

    2.    *Appointment of Class Counsel.* ....................................................*20*

E.    **Predominance and Superiority** ...............................................**20**

VII.    **ADEQUACY OF THE METHOD OF NOTICE** .............................**21**

VIII.    **APPOINTMENT OF APEX AS THE SETTLEMENT**

    **ADMINISTRATOR** ..............................................................................**23**

X.    **CONCLUSION** ..........................................................................**25**

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1
2

# TABLE OF AUTHORITIES

3    **Cases**

4    *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980) ......................................................21

5    *Dukes v. Wal–Mart, Inc*., 564 U.S. 338, 350 & 359 (2011)......................................23

6    *Elsen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-77 (1974) ..................................27

7    *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ......................................................22

8    *Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989)..............................27

9    *Johnson v. California*, 543 U.S. 499, 504–05 (2005) ................................................23

10

11    *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997).........................19, 20

12    *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001)............................................18

13    *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 267 (N.D. Cal. Mar. 19, 2015)
     ...............................................................................................................................14

14
15    *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975) .............................................18

16    *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986 (S.D. Cal. 2014)..................................14

17    *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) .......................21

18    *Clayton v. Knight Transp.*, 2013 WL 5877213, at *23 (E.D. Cal. Oct. 30, 2013) ......16

19    *Covillo v. Specialty's Café*, No. C-11-00594 DMR, 2014 WL 954516, at *7 (N.D.
     Cal. Mar. 6, 2014) ................................................................................................14

20    *Craft v. Cnty. of San Bernardino*, 624 F. Supp. 2d 1123, 1127 (C.D. Cal. 2008).......16

21    *In re Agent Orange Prod. Liabiltiy Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).............15

22    *In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992)
     ...............................................................................................................................17

23
24    *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ........15

25    *In re Hill*, 775 F.2d 1037 (9th Cir. 1985) ................................................................15

26    *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000) .................14, 19

27    *In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013) ................16

28    *In re Toys "R" Us-Del., Inc. FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014) ..14

     *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009) ..16

iii

*Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002) ............................ 16

*Laffitte v. Robert Half Int'l, Inc.* 1 Cal.5th 480, 486 & 506 (2016) ....................... 15

*Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002) ......... 13

*Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008) ................... 18

*Mendoza v. United States*, 623 F.2d 1338, 1352 (9th Cir. 1980) ............................... 21

*Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014) ............................................................................................................. 13

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989) ........... 16

*Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) ................................................................................................................................... 16

*Schaefer v. Overland Express Family of Funds*, 169 F.R.D. 124, 131 (S.D. Cal. 1996) ................................................................................................................................... 21

*Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) ................................................................................................................................... 16

*Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) ................................................................................................................................... 16

*Staton v. Boeing*, 327 F.3d 938, 976-78 (9th Cir. 2003) ................................... 14, 16

*Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996) ..................... 17

*Van Vranken*, 901 F.Supp. at 297 ................................................................................. 16

*Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) ..... 16

*Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) ............................................................ 11

*Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002) ............................... 15, 16

*Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987) .......................................... 19

*Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026 (9th Cir. 1997) ................... 15

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224, 253 (2001) ....................... 15

**Rules**

Federal Rule of Civil Procedure  23(a) ................................................................ 17, 18

Federal Rule of Civil Procedure  23(a)(1) ...................................................................... 17

Federal Rule of Civil Procedure  23(a)(4) ...................................................................... 19

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Federal Rule of Civil Procedure 23(b)..........................................................................17

Federal Rule of Civil Procedure 23(b)(3) ..................................................................20

Federal Rule of Civil Procedure 23(c)(2) ..................................................................22

Federal Rule of Civil Procedure 23(c)(2)(B) ......................................................21, 22

Federal Rule of Civil Procedure 23(h) ......................................................................15

**Other Authorities**

*Manual for Complex Litig., Fourth* § 21.132 ...........................................................19

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.    SUMMARY OF MOTION

Plaintiff Steven Keller ("Plaintiff") respectfully requests that this Court grant preliminary approval of the Class Action Settlement Agreement and Release ("Settlement," "Agreement," or "Settlement Agreement") entered into by and between Plaintiff, individually and on behalf of the proposed Class and aggrieved employees, and Defendants CVS Pharmacy, Inc. Garfield Beach CVS, L.L.C., Longs Drug Stores California, L.L.C., and CVS Health Corporation ("Defendants"). Subject to Court approval, Plaintiff and Defendants have agreed to settle this lawsuit for a Gross Settlement Amount of Two Million Dollars ($2,000,000.00)[1] on a non-reversionary basis.

The Parties reached the Settlement after engaging in significant formal and informal discovery, investigations, and arm's-length negotiations. The Settlement resulted from a formal mediation conducted by Tripper Ortman, a well-respected mediator who is experienced in wage-and-hour class actions. The Settlement satisfies the criteria for approval and falls within the range of possible approval under federal and California law. Additionally, the proposed Class Notice[2] provides the best notice practicable under the circumstances and will allow each Class Member a full and fair opportunity to evaluate the Settlement and decide whether to participate in it. Accordingly, Plaintiff moves the Court to grant preliminary approval of the Settlement and the allocations for Class Counsel's attorneys' fees and litigation costs, Class Representative's Service Enhancement, Administration Expenses, and penalties under the Private Attorneys General Act, California Labor Code §2698, et seq. ("PAGA"); conditionally certify the proposed Class for settlement purposes; direct

---

[1] A copy of the fully-executed Settlement Agreement is attached as "**EXHIBIT 1**" to the Declaration of Barbara DuVan-Clarke in Support of Plaintiff's Motion For Class Action Settlement ("DuVan-Clarke Decl."). Settlement Agreement, ¶ 18.

[2] The Notice of Class Action Settlement (i.e., Class Notice) is attached as "**EXHIBIT A**" to the Proposed Order, filed concurrently herewith.

**PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  distribution of the Class Notice; and set a Final Approval Hearing.

2  **II.    PROCEDURAL HISTORY AND FACTUAL BACKGROUND**

3       Defendants operate retail pharmacies with multiple locations California and
4  throughout the United States of America.

5       On December 16, 2022, Plaintiff provided written notice to the Labor and
6  Workforce Development Agency ("LWDA") and Defendants of Plaintiff's intent to
7  seek civil penalties for alleged violations of the California Labor Code and Industrial
8  Welfare Commission Wage Orders ("PAGA Notice").

9       On December 20, 2022, Plaintiff filed a Class Action Complaint for Damages
10  against Defendants CVS Pharmacy, Inc., Garfield Beach CVS, L.L.C. and CVS
11  Health Corporation in the Superior Court of California for the County of Los Angeles,
12  Case No. 22STCV39558.

13      On January 23, 2023, Defendants CVS Pharmacy, Inc., Garfield Beach CVS,
14  LLC, and CVS Health Corporation filed the Defendants' Answer to Plaintiff's Class
15  Action Complaint and a Notice of Removal to Federal Court. Defendants provided
16  notice of the Notice of Removal on January 24, 2023, and informed the Parties that
17  the matter had been removed to the United States District Court for the Central
18  District of California, and was assigned the case number 2:23-cv-00515.

19      On April 7, 2023, Plaintiff filed a First Amended Class Action Complaint for
20  Damages & Enforcement Action Under the Private Attorneys General Act, California
21  Labor Code § 2698, Et. Seq. ("the First Amended Complaint") in the U.S. District
22  Court (Docket No. 13-1). The First Amended Complaint served to add
23  Defendant Longs Drug Stores California, L.L.C. as a party to the action, and to add
24  claims pursuant to the Private Attorneys General Act ("PAGA") to the Action.

25      On May 2, 2023, Defendants filed Defendants' Answer to Class Action and
26  PAGA First Amended Complaint (Docket No. 18).

27      Plaintiff's core allegations are that Defendants violated the California Labor
28  Code and California Business and Professions Code by, *inter alia*, failing to properly

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

classify its exempt Store Manager employees, failing to properly pay minimum and overtime wages, failing to provide compliant meal and rest periods or pay associated premiums, failing to timely pay wages during employment and upon termination and associated waiting time penalties, failing to provide one day's rest in seven days of work, failing to provide compliant wage statements, and failing to reimburse necessary business-related expenses. Plaintiff contends that Defendants' conduct constitutes unfair business practices and gives rise to penalties under the Private Attorneys General Act, California Labor Code § 2698, Et. Seq. ("PAGA"). Plaintiff further alleges that Defendants' failure to properly pay all compensation due, arises from, *inter alia*, Defendants' practices and policies which required Class Members to work before clocking in for their shifts and after clocking out of their shifts. As a result, Plaintiff contends that he and the Class Members and PAGA Employees are entitled to, *inter alia*, unpaid wages, penalties (including and not limited to, penalties pursuant to PAGA), and attorneys' fees.

Defendants deny any liability of any kind associated with the claims and allegations, and further deny that Plaintiff or the Class Members or PAGA Employees are entitled to any relief. Defendants also deny that this case is appropriate for class or representative treatment for any purpose other than the Settlement. Defendants maintain, among other things, that they have complied with federal and California laws in all respects.

On May 10, 2023, the parties participated in a private mediation before Tripper Ortman, a well-respected mediator experienced in handling complex wage-and-hour matters. The matter did not resolve at mediation but the parties continued negotiations and exchange of information. Ultimately, with the aid of the mediator's evaluations and ongoing assistance, the Parties reached the Settlement to resolve the above-captioned action ("Action").

## III.    SUMMARY OF THE SETTLEMENT TERMS

### A.    The Class for Settlement Purposes

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

For settlement purposes only, the Parties agree to class action certification of the following Class (individually referred to as "Class Members") consisting of an estimate of approximately 676 individuals:

> All current and former CVS employees who were given the title "store manager" and classified as exempt employees in California at any time during the Class Period. Settlement Agreement, ¶ 4.

The period between December 20, 2018, and September 15, 2022, is the "Class Period." Settlement Agreement, ¶ 6.[3]

As discussed in Section V, *infra*, conditional class certification is appropriate with respect to the Settlement.

The settlement defines the PAGA Employees as:

> All current and former CVS employees who were given the title of "store manager" and were classified as an exempt employee in California at any time during the PAGA Period. Settlement Agreement, ¶25.

The period between October 16, 2021, and September 15, 2022 is the "PAGA Period." Settlement Agreement, ¶ 28.

"Settlement Employees" refers to all Class Members and all PAGA Employees. Settlement Agreement, ¶ 40.

## B. Essential Terms of the Settlement

Defendants will pay a Gross Settlement Amount of Two Million Dollars ($2,000,000.00) on a non-reversionary basis. Settlement Agreement, ¶ 18. The Net Settlement Amount means the amount remaining after deducting the following from the Gross Settlement Amount: (1) attorneys' fees of up to thirty-five percent (35%) of the Gross Settlement Amount (i.e., up to $700,000 if the Gross Settlement Amount is $2,000,000.00) and reimbursement of litigation costs and expenses of up to Twenty-Five Thousand Dollars ($25,000.00) to Class Counsel ("Attorneys' Fees and Costs"); (2) Class Representative Service Enhancement of up to Ten Thousand Dollars

---

[3] The Class Period ends on the date CVS reclassified its exempt Store Managers to non-exempt Store Team Leaders.

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

($10,000.00) to Plaintiff Steven Keller; (3) Settlement Administration Expenses, which are currently estimated not to exceed Thirty Thousand Dollars ($30,000); and (4) the PAGA Payment of Fifty Thousand Dollars ($50,000). *Id.*, ¶¶ 21, 27, 36, 54.a.-f.

Assuming the allocations towards these payments are awarded in full, the Net Settlement Amount that will be available to be allocated to Class Members who do not submit a timely and valid Request for Exclusion ("Participating Class Members") is currently estimated to be at least One Million, One Hundred Eighty-Five Thousand Dollars ($1,185,000). The entire Net Settlement Amount will be distributed to Participating Class Members based upon their Workweeks (defined *infra*) and no portion of the Gross Settlement Amount shall revert to Defendants.

**C.    Calculation of Individual Settlement Shares**

The Settlement Administrator shall calculate each Participating Class Member's *pro rata* Class Settlement Payment based on each Participating Class Member's relative percentage of Workweeks in the Class Period as reflected on Defendants' internal records. Settlement Agreement, ¶ 68.

Each Class Settlement Payment will be allocated as twenty percent (25%) wages, fifty percent (50%) penalties, and twenty-five percent (25%) interest. Settlement Agreement, ¶ 69. The portion allocated to wages will be reported on an IRS Form W-2 and the portions allocated to non-wages (for interest and penalties) will be reported on an IRS Form-1099 (if applicable) by the Settlement Administrator. *Ibid.* The Settlement Administrator will reduce each Class Settlement Payment by the employee's share of taxes and withholdings. Defendants will be separately responsible for any employer payroll taxes required by law, including, but not limited to, the employer FICA, FUTA, and SDI contributions, which shall not be paid from the Gross Settlement Amount and shall be paid by Defendants separately and in addition to the Gross Settlement Amount. *Id.*, ¶¶ 54, 69.

1    The Settlement Administrator shall calculate each PAGA Employee's *pro rata* share of the PAGA Employee Payment ("Individual PAGA Employee Payment") based on each PAGA Employee's relative percentage of Pay Periods in the PAGA Period as reflected on Defendants' internal records. Settlement Agreement, ¶ 68. All Individual PAGA Employee Payments will be allocated entirely to penalties, and will be reported on an IRS 1099 without withholdings. Settlement Agreement ¶ 54.e.

D.    **Request for Exclusion, Notice of Objection, and Workweeks Dispute Procedures**

Any Class Member wishing to be excluded from the Class Action portion of the Settlement must submit a written letter ("Request for Exclusion") to the Settlement Administrator, by mail, on or before the date that is forty-five (45) calendar days from the initial mailing of the Class Notice by the Settlement Administrator ("Response Deadline"). Settlement Agreement, ¶¶ 56, and 66. A Request for Exclusion must include: (a) the Class Member's name, (b) a written statement that the Class Member requests to be excluded from the Settlement, (c) the last four digits of the Class Member's Social Security number. *Id*., ¶ 66. PAGA Employees cannot opt out of the settlement of the PAGA claims, and if a Class Member who is also a PAGA Employee submits a Request for Exclusion, the individual will still be deemed to have released the Released Parties from the Released PAGA Claims. Settlement Agreement, ¶ 56.

To object to the Settlement in writing, a Participating Class Member must mail a valid written objection ("Objection") to the Settlement Administrator, by mail, on or before the Response Deadline. *Id*., ¶ 65. Participating Class Members shall be permitted to withdraw their Objections in writing by submitting a withdrawal statement to the Settlement Administrator not later than one (1) business day prior to the Final Approval Hearing, or as otherwise ordered by the Court. *Ibid*. Participating Class Members may also present their objection orally at the Final Approval Hearing,

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1    irrespective of whether they submit an Objection.

2         The Class Notice will include the procedure by which a Participating Class

3    Member may dispute the number of Workweeks allocated to him or her by

4    submitting a timely and valid written statement ("Workweeks Dispute").

5    Settlement Agreement, ¶ 63.

6         **E.    Scope of the Release**

7         The Released Class Claims that are the subject of the Class Settlement are:

8         Any and all wage and hour claims that accrued up to the end of the Class
9         Period and that have been or could have been asserted in the instant Action
          based on the allegations in the Complaint in this Action, including but not
10        limited to, Failure to Pay Wages for All Hours Worked in Violation of the
          Industrial Welfare Commission Wage Orders and California Labor Code §§
11        200-204, 226, 500, 510, 558, 118.2, 1194, 1197, 1197.1, 1198 abd 8 CRR §
12        11070; Failure To Pay Overtime Premium Pay in Violation of Labor Code
          §§ 200-203, 226, 500, 510, 558, 558.1, 1194, 1194.2, 1198 & IWC Wage
13        Order 9-2001, § 3; Meal and Rest Break Violations California Labor Code
14        §§ 200, 226.7, 512, 1198 and 8 CCR § 11070; Failure to Timely Pay Wages
          During Employment in Violation of Labor Code §§ 204 and 210; Failure to
15        Provide One Day's Rest In Seven In Violation of Labor Code §§ 551, 552
16        and 852; Failure to Reimburse for Reasonable and Necessary Business
          Expenses §§ 227.3, 2800 and 2802; Failure to Provide Accurate Itemized
17        Wage Statements in Violation of Labor Code §§ 226(a), 226.3, 558.1, 1174;
18        Failure to Pay Wages At Time of Termination in Violation of California
          Labor Code §§ 201-203; Unfair Competition in Violation of Business &
19        Professions Code §§ 17200, *et seq.*; any derivative claims based on such
20        alleged violations, including those under the Fair Labor Standards Act
          ("FLSA") or any applicable California Industrial Welfare Commission
21        Wage Order; related common law claims for conversion, other alleged
22        tortious conduct, breach of contract, and misrepresentation; and any other
          derivative claims under California law including claims for statutory or civil
23        penalties, liquidated damages, punitive damages, interest attorneys' fees,
24        litigation and other costs, expenses, restitution, and equitable and declaratory
          relief. Settlement Agreement., ¶ 78.
25

26        The Released PAGA Claims that are the subject of the PAGA Settlement are:

27        Any and all claims and/or causes of action under PAGA (Cal. Labor Code
28        §§ 2698 et seq.) that accrued up to the end of the PAGA Period and that
          have been or could have been asserted in the instant Action based on the

                                              7

allegations in the Complaint and LWDA Notice, including but not limited to, Failure to Pay Wages For All Hours Worked in Violation of the Industrial Welfare Commission Order (IWC) 8-2001 and California Labor Code §§ 200-204, 226, 500, 510, 558, 1182.12, 1194, 1197, 1197.1, 1198, 12 CCR § 11040; Failure To Pay Overtime Premium Pay in Violation of Labor Code §§ 200-203, 226, 500, 510, 558, 558.1, 1194, 1194.2, 1198 & IWC Wage Order 7-2001, §3; Meal and Rest Break Violations, California Labor Code §§ 226.7, 512, 1198, and 12 CCR § 11040; Failure to Timely Pay Wages During Employment in Violation of Labor Code §§ 204 and 210; Failure to Provide One Day's Rest In Seven in Violation of Labor Code §§ 551, 552 and 852; Failure to Provide Accurate Itemized Wage Statements in Violation of Labor Code §§ 226, 226.3, 1174, 1198, Wage Order 7-2001; Failure to Pay Wages At Time of Termination in Violation of California Labor Code §§ 201-203, 1194; Failure to Reimburse Reasonable and Necessary Business Expenses In Violation of Labor Code §§ 2800 and 2802, and IWC Wage Order 7-2001; any derivative claims based on such alleged violations, including those under any applicable California Industrial Welfare Commission Wage Order; and any other derivative claims under California law including claims for statutory or civil penalties, liquidated damages, punitive damages, interest, attorneys' fees, litigation and other costs, expenses, restitution, and equitable and declaratory relief. Settlement Agreement, ¶ 80.

The Released Parties means CVS Pharmacy, Inc., Longs Drug Stores California LLC, Garfield Beach CVS, LLC, CVS Health Corporation, and their affiliates, divisions, subsidiaries, parents, predecessors, any merged entity or merged entities and/or its or their present and former officers, partners, directors, managers, supervisors, employees, attorneys, agents, shareholders and/or successors, assigns, trustees, heirs, administrators, executors, representatives and/or principals thereof. *Id*., ¶ 34.

Upon the Effective Date[4] and full funding of the Gross Settlement Amount, in addition to the claims being released by all Participating Class Members and all PAGA Employees, Plaintiff will release and forever discharge the Released Parties, from the following additional claims:

---

[4] See the Settlement Agreement, ¶ 15, for the definition of the "Effective Date."

Subject to the exclusion set forth in Paragraph 83 below, the releases agreed upon by Plaintiff only (the "**Additional Release**") and made part of the Settlement shall include a release of Released Parties from all claims, actions, causes of action, lawsuits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, bonuses, controversies, agreements, promises, claims, charges, complaints and demands whatsoever, whether in law or equity, known or unknown, which against the Released Parties, the Plaintiff and the Plaintiff's heirs, executors, administrators, successors, and assigns, may now have or hereafter later determine that they have or had upon, or by reason of, any cause or thing whatsoever relating to their employment or termination of employment. Settlement Agreement, ¶ 82. Notwithstanding the above Additional Release, Plaintiff does not release or waive his rights to pursue the claims set forth in his individual lawsuit filed on February 8, 2023, in Ventura County Superior Court, Case No. T23-197 (Plaintiff's "Individual Action"). Plaintiff and the Released Parties agree that the claims brought as part of the Individual Action are explicitly carved out of this Additional Release. *Id.*, ¶ 83.

## IV.    THE LEGAL STANDARD FOR PRELIMINARY APPROVAL OF THE CLASS ACTION SETTLEMENT

Class action settlements require court approval.  Fed. R. Civ. Proc. 23(e). Although judicial policy favors settlement of class actions, *Class Plaintiffs v. City of Seattle,* 955 F.2d 1268, 1276 (9th Cir. 1992), the decision to approve or reject a settlement is within the trial court's discretion, and that decision may be reversed only upon a strong showing of "clear abuse of discretion." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998); *Class Plaintiffs*, 955 F.2d at 1276.

A settlement should be approved if it is "fundamentally fair, adequate, and reasonable."  *Hanlon*, 150 F.3d at 1026; Fed. R. Civ. P. 23(e). In approving a class action settlement, Courts engage in a two-step process: (1) preliminary approval of the settlement; and (2) a later detailed review after notice is given to class members, to determine whether final approval is appropriate. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004). At the preliminary approval stage, courts must approve a class action settlement "if it appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, and does not improperly grant preferential treatment to class representatives or segments of the

9

1  class, and falls within the range of possible approval." *In re Tableware Antitrust*
2  *Litig.*, 484 F. Supp. 2d 1078, 1079 (N.D. Cal. 2007).

3      In evaluating the fairness of the class action settlement, courts should give
4  "proper deference to the private consensual decision of the parties." *Hanlon*, 150 F.3d
5  at 1027. Courts need only ensure that the settlement is not a product of "fraud or
6  overreaching by, or collusion between, the negotiating parties, and that the settlement,
7  taken as a whole, is fair, reasonable, and adequate to all concerned." *Id.*

8  **V.    THE SETTLEMENT SHOULD BE PRELIMINARILY APPROVED**

9      Preliminary approval is appropriate if the settlement is "potentially fair,"
10  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 386 (C.D. Cal. 2007), and has no
11  "glaring deficiencies" that would make it clear that a final approval hearing is not
12  warranted. *Murillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 478 (E.D. Cal. Mar. 4,
13  2010). As discussed below, the Settlement resulted from hard-fought litigation and
14  extensive negotiations, and is fair and reasonable. Therefore, the Settlement should be
15  preliminarily approved.

16      **A.    The Settlement Resulted from Arm's Length Negotiations and**
17          **Extensive Investigation and Discovery**

18      An initial presumption of fairness exists "if the settlement is recommended by
19  class counsel after arm's-length bargaining." *Harris v. Vector Mktg. Corp.*, No. 08-
20  cv-5198-EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011) (citation omitted).
21  Courts give great weight to such recommendation as class counsel is most familiar
22  with the issues underlying the case. *Nat'l Rural*, 221 F.R.D. at 528.

23      Here, the parties actively litigated this case since it was commenced on
24  December 20, 2022. Class Counsel conducted a thorough investigation into the facts
25  and circumstances of the case and diligently investigated the allegations in this
26  lawsuit. (*See* Declaration of Barbara DuVan-Clarke in Support of Plaintiff's Motion
27  for Preliminary Approval of Class Action Settlement ("DuVan-Clarke Decl."), ¶¶ 11-
28  13). Class Counsel reviewed a volume of documents and data obtained from

Defendants, Plaintiff, and other sources, including and not limited to, Plaintiff's employment records, job description, payroll documents, time data ("punch report"), Defendants' company policies and procedures (including, but not limited to, CVS Health expense reporting policy, California Travel Time Pay Policy, Meal and Rest Period Policy for Non-Exempt California Employees, Timekeeping and Payroll Practices Policy, and Time Correction Forms), among other information and documents.  DuVan-Clarke Decl., ¶ 12.  The parties also met and conferred on numerous occasions over issues relating to the pleadings, jurisdiction, and the production of documents and data prior to mediation.  Ibid.

The parties reached the Settlement after reviewing all available evidence, arm's-length bargaining, and participating in mediation conducted by Tripper Ortman, Esq., a well-respected mediator experienced in handling complex wage-and-hour matters. *Id.*, ¶ 11. During the mediation, the parties exchanged information and discussed various aspects of the case, including and not limited to, Plaintiff's claims, the risks and delays of further litigation and of proceeding with certification, the law relating to off-the-clock theory, meal and rest periods, exemption and misclassification, wage-and-hour law and enforcement, and PAGA representative claims, as well as the evidence produced and analyzed, and the possibility of appeals, among other things. *Ibid.*

During all settlement discussions, the parties conducted their negotiations at arm's length from an adversarial position. *Ibid.* Arriving at a settlement that was acceptable to both parties was not easy. With the aid of the mediator's evaluation, the parties agreed that this case was well-suited for settlement given the legal issues relating to the claims, as well as the costs and risks to both sides that would attend further litigation. *Id.*, ¶¶ 11 & 18.  The Settlement takes into account the strengths and weaknesses of each side's position and the uncertainty of how the case might have concluded at certification, trial, and/or appeals. *Id., ¶¶* 10, 12, 18, & 21.

The Settlement is based on this large volume of facts, evidence, and

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1   investigation, and the parties' negotiations during and after the mediation.[5]  While the

2   parties disagree over the merits and certifiability of Plaintiff's claims, Plaintiff and

3   Class Counsel agree that the Settlement is fair, reasonable, adequate, and in the best

4   interest of the Class, the PAGA Employees, and the State of California, in light of all

5   known facts and circumstances.  DuVan-Clarke Decl., ¶¶ 11, 13, & 21.

6       **B.    The Settlement Is Fair, Reasonable, and Adequate**

7       The Gross Settlement Amount of Two Million Dollars ($2,000,000) represents

8   a fair, reasonable, and adequate resolution of this lawsuit.  Under the Settlement, the

9   entire Net Settlement Amount will be distributed to Participating Class Members and

10  is currently estimated to be at least One Million, One Hundred Eighty-Five Thousand

11  Dollars ($1,185,000). The amount of the Settlement is reasonable considering the

12  risks relating to certification, liability, and the ability to recover monetary relief on a

13  class-wide or representative basis.  *Id.*, ¶¶ 11, 13, 18, & 21.  Additionally, the

14  Settlement guarantees a certain monetary recovery to Participating Class Members

15  and PAGA Employees in a reasonably short period of time, as opposed to waiting

16  additional years for the same, or possibly, no recovery.

17      The Settlement was calculated using data and information obtained through

18  case investigation and formal and informal exchange of information and documents in

19  advance of and/or in the context of mediation and settlement negotiations.  *Id.*, ¶¶ 11

20  & 12.  Prior to the mediation, Class Counsel conducted extensive investigation into

21  the claims.  *Id.*, ¶¶ 11, 12, 13, 16, & 18.  The data and information obtained enabled

22  Class Counsel to calculate the value of the claims and the monetary recovery that

23  could potentially be obtained, and permitted a complete understanding of Defendants'

24  employment policies, practices, and procedures. *Id.*, ¶¶ 12, 16, & 18. This information

25

26  ────────────────
    [5] *See Hanlon*, 150 F.3d at 1027 (affirming approval of settlement after finding "no evidence to
27  suggest that the settlement was negotiated in haste or in the absence of information illuminating the
    value of plaintiffs' claims"); *see also Villegas v. J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA
28  (EMC), 2012 WL 5878390, at *6 (N.D. Cal. Nov. 21, 2012) (stating that participation in private
    mediation "tends to support the conclusion that the settlement process was not collusive").

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

proved invaluable in negotiating a settlement amount that provides fair, adequate, and reasonable payment for the resolution of the class claims. DuVan-Clarke Decl.., ¶ 21.

The parties have also considered the potential risks and rewards inherent in any case and, in particular, with this case. *Id.*, ¶¶ 11, 17, 18, 19, 21. Prior to the mediation, Class Counsel performed extensive damages and valuation analysis based on class data and a sampling of data provided by Defendants. *Id.*, ¶¶ 12 & 18. During the mediation, Defendants contended, among other things, that their policies and practices fully complied with California law, that their Store Managers were properly classified, that misclassification claims were particularly ill-suited for class treatment, and that the majority of the putative class was bound by arbitration agreements containing a class action waiver (requiring then to litigate on an individual basis in arbitration and not as part of any class action). *Id.*, ¶¶ 11 & 18.

Plaintiff faces numerous risks in continued litigation, including and not limited to, the risk of receiving no recovery if a class is not certified and/or no liability is found and the Court determining that adjudication on a representative or class basis is not appropriate. *Id.*, ¶¶ 13, 17, 18, & 21. Plaintiff also faces the real possibility that the amount recovered against Defendants after years of litigation and a lengthy and costly trial is less than the amount negotiated in this Settlement. *Ibid.* Additionally, the Settlement is fair because it poses no risk of unequal treatment of any Class Member. Class Settlement Payments will be calculated based upon each Class Member's Workweeks during the Class Period. Settlement Agreement, ¶ 68.

There is no reason to doubt the fairness of the proposed plan of allocation of the settlement funds for purposes of preliminary approval. Even at the final approval stage: "an allocation formula need only have a reasonable, rational basis, particularly if recommended by experienced and competent class counsel." *Nguyen v. Radient Pharm. Corp.*, No. 11-cv-00406, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014); *see also Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 367 (S.D.N.Y. 2002). Considering the facts in this case, the amount of the Settlement represents a

PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

1    fair, reasonable, and adequate recovery for the Class. *Id.*, ¶¶ 11, 13, 18 & 21.

2    **C.    The Settlement Is of Significant Value and Within the Range of**

3    **Approval**

4    The Gross Settlement Amount of Two Million Dollars ($2,000,000.00)

5    provides substantial monetary recovery to the Class Members, and is fair, reasonable,

6    and adequate in light of the value of the claims and the significant risks of continued

7    litigation. Similarly, all of the other Settlement terms for which Plaintiff requests

8    approval and/or preliminary approval fall within the range of reasonableness, as

9    discussed below.

10    *1.    The allocation for the Class Representative Service*

11    *Enhancement is reasonable.*

12    Subject to Court approval, Plaintiff will receive a Class Representative Service

13    Enhancement of Ten Thousand Dollars ($10,000). Settlement Agreement, ¶ 54.b.

14    The Class Representative Service Enhancement will be paid in addition to Plaintiff's

15    Class Settlement Payment and Individual PAGA Employee Payment. *Ibid.*

16    The trial court has discretion to award incentives to the class representatives.[6]

17    Courts routinely approve incentive awards to class representatives for their time and

18    efforts, and the risks they undertake on behalf of the class. *See, e.g.*, *Staton v. Boeing*,

19    327 F.3d 938, 976-78 (9th Cir. 2003) (discussing cases approving incentive awards in

20    the range of $2,000 to $25,000). "Incentive awards are particularly appropriate in

21    wage-and-hour actions" because named plaintiffs bear "a significant reputational risk

22

23    _____

[6] *See In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 463 (9th Cir. 2000). In assessing the

24    reasonableness of an incentive award, several district courts in the Ninth Circuit have considered the

25    factors set forth in *Van Vranken v. Atl. Richfield Co.*, 901 F. Supp. 294, 299 (N.D. Cal. 1995): (1) the
risk to the class representative in commencing a class action; (2) the notoriety and personal

25    difficulties encountered by the class representative; (3) the amount of time and effort spent by the

26    class representative; (4) the duration of the litigation; and (5) the personal benefit, or lack thereof,
enjoyed by the class representative as a result of the litigation. *See, e.g., In re Toys "R" Us-Del., Inc.*

27    *FACTA Litig.*, 295 F.R.D. 438, 470 (C.D. Cal. 2014); *Covillo v. Specialty's Café*, No. C-11-00594
DMR, 2014 WL 954516, at *7 (N.D. Cal. Mar. 6, 2014); *Carr v. Tadin, Inc.*, 51 F. Supp. 3d 970, 986

28    (S.D. Cal. 2014).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

1  for bringing suit against their former employers." *Bellinghausen v. Tractor Supply*
2  *Co.*, 306 F.R.D. 245, 267 (N.D. Cal. Mar. 19, 2015) (quotation marks omitted).

3      Here, the contemplated Class Representative Service Enhancement is fair and
4  appropriate and is well within the range of incentive payments awarded by district
5  courts. *See id.*; *Angell v. City of Oakland*, 13 cv-00190 NC, 2015 WL 65501, at *8
6  (N.D. Cal. Jan. 5, 2015) (approving $9,000 incentive awards); *Covillo*, 2014 WL
7  954516, at *8 (approving an $8,000 incentive award).

8      Plaintiff spent considerable time and effort to produce relevant documents and
9  past employment records and provide the facts and evidence necessary to support the
10  allegations.  DuVan-Clarke Decl., ¶ 20; Declaration of Steven Keller in Support of
11  Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Keller
12  Decl."), ¶¶ 6-8.  Plaintiff was available whenever his counsel needed him and tried to
13  obtain and provide documents and information that would facilitate the pursuit of the
14  class claims.  Keller Decl., ¶¶ 6-7.  Accordingly, it is appropriate and just for Plaintiff
15  to receive a reasonable enhancement payment for his services on behalf of the Class.

16          **2.    *The allocations for the Attorneys' Fees and Costs are***
17          ***reasonable.***

18      The Settlement establishes a Gross Settlement Amount of Two Million Dollars
19  ($2,000,000.00) and provides for Class Counsel to apply for attorneys' fees in an
20  amount of up to thirty-five percent (35%) of the Gross Settlement Amount (e.g.,
21  $700,000.00 if the Gross Settlement Amount is $2,000,000.00).  Settlement
22  Agreement, ¶ 54.  Class Counsel will bring an appropriate motion in advance of the
23  Final Approval Hearing pursuant to Rule 23(h), and submit supporting evidence and
24  documents.

25      Under California and Ninth Circuit precedent, a court has discretion to
26  determine attorneys' fees using either the lodestar method or the percentage-of-the-
27  fund method.[7]  District courts may adjust the twenty-five percent (25%) benchmark

28
---
[7] It is appropriate to calculate and award attorneys' fees as a percentage of a monetary fund that
*(Footnote continued)*

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS
ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

(observed by the Ninth Circuit) upward or downward if "the percentage recovery would be either too small or large in light of the hours devoted to the case or other relevant factors." *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *Staton*, 327 F.3d at 968; *Vizcaino*, 290 F.3d at 1048. If a proposed class action settlement includes an award of attorneys' fees, courts must evaluate that fee award on a case-by-case basis in the overall context of the settlement, and an award above the twenty-five percent (25%) benchmark may be warranted.[8] In California, attorneys' fees tend to be awarded above the twenty-five percent (25%) federal benchmark. *See Van Vranken*, 901 F.Supp. at 297 (holding that fee awards of 30-50% are more typical where the fund is less than $10 million); *Craft v. City of San Bernardino*, 624 F.Supp.2d 1123, 1127 (C.D. Cal. 2008) (holding that attorneys' fees in cases where the fund is below $10 million are often more than 25%). Moreover, "awards in the Central District are in the 20% to 50% range." *Clayton v. Knight Transp.*, 2013 WL 5877213, at *23 (E.D. Cal. Oct. 30, 2013).[9]

The goal is to award "reasonable compensation for creating a common fund." *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989). In

---

has, by litigation, been preserved or recovered for the benefit of others. *Laffitte v. Robert Half Int'l, Inc.* 1 Cal.5th 480, 486 & 506 (2016); *Wershba v. Apple Computer, Inc.*, 91 Cal.App.4th 224, 253 (2001); *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043 (9th Cir. 2002); *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011). The percentage method is based on the amount of total recovery, as opposed to the total amount of claims made, and is well established in federal courts and the Ninth Circuit. *Boeing v. Van Gemert*, 444 U.S. 472, 478 (1980); *In re Hill*, 775 F.2d 1037 (9th Cir. 1985); *Williams v. MGM-Pathe Commc'n Co.*, 129 F.3d 1026 (9th Cir. 1997); *In re Agent Orange Prod. Liabiltiy Litig.*, 818 F.2d 226, 232 (2d Cir. 1987).

[8] *Knisley v. Network Assocs.*, 312 F.3d 1123, 1126 (9th Cir. 2002); *Vizcaino*, 290 F.3d at 1048; *Knight v. Red Door Salons, Inc.*, 2009 WL 248367, at *6 (N.D. Cal. Feb. 2, 2009).

[9] Other districts usually award attorneys' fees in the 30-40% range in wage-and-hour class actions that result in recovery of a common fund under $10 million. *See Vasquez v. Coast Valley Roofing, Inc.*, 266 F.R.D. 482, 491-92 (E.D. Cal. 2010) (citing recent wage-and-hour class actions where district courts approved attorneys' fee awards ranging from 30-33%); *Singer v. Becton Dickinson and Co.*, 2010 WL 2196104, *8 (S.D. Cal. June 1, 2010) (approving attorneys' fees of one-third of the common fund and holding that the award was similar to awards in other wage-and-hour class actions where fees ranged from 30.3-40%); *Romero v. Producers Dairy Foods, Inc.*, 2007 WL 3492841 (E.D. Cal. Nov. 14, 2007) (recognizing that "fee awards in class actions average around one-third" of the settlement).

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

reviewing a fee award request, courts consider the following factors: (1) the results achieved; (2) whether there are benefits to the class beyond the immediate generation of a cash fund; (3) the risks of litigation; (4) the skill required of counsel and quality of the work performed; (5) the contingent nature of the fee and the foregoing by counsel of other work; and (6) the reactions of the class. *Vizcaino*, 290 F.3d at 1048-50; *In re Toyota Motor Corp.*, 2013 WL 3224585 (C.D. Cal. June 17, 2013). Of these factors, the most significant factor is the "degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).

Here, the attorneys' fee award provided for by the Settlement is reasonable, particularly in light of the time and effort expended by Class Counsel. Class Counsel litigated this case for over two (2) years, with the possibility of an unsuccessful outcome and no fee recovery of any kind. DuVan-Clarke Decl., ¶ 11. The ongoing work has been demanding and ultimately successful in achieving a substantial settlement. Given the strengths and weaknesses of the claims and the risk and expense of further litigation, Class Counsel has achieved an excellent result in this lawsuit. Considering the amount of the fees to be requested, the work performed, and the risks incurred, the allocations for Attorneys' Fees and Costs provided for by the Settlement are reasonable and should be awarded. *See Vizcaino*, 290 F.3d at 1051. Class Counsel will give additional details at the time of filing Plaintiff's Motion for Final Approval about the time expended by Class Counsel litigating this case, and Class Counsel's hourly billing rates for purposes of a lodestar cross-check calculation.

## VI. CERTIFICATION OF THE PROPOSED CLASS IS APPROPRIATE UNDER RULE 23

Class certification under Rule 23(a) is appropriate where the plaintiff demonstrates the four requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representation), and one of the three requirements of Rule 23(b). *Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996). The proposed Class meets all of these requirements.

1

### A.    <u>Numerosity</u>

A class is sufficiently numerous if it is "so large that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). A reasonable estimate of the number of purported class members is sufficient to meet the numerosity requirement."  *In re Badger Mountain Irr. Dist. Sec. Litig.*, 143 F.R.D. 693, 696 (W.D. Wash. 1992).

The proposed Class consists of approximately 676 individuals.  DuVan-Clarke Decl., ¶ 9.  The proposed Class is sufficiently numerous, and joinder of all Class Members would be impractical. *See Mazza v. Am. Honda Motor Co.*, 254 F.R.D. 610, 617 (C.D. Cal. 2008), *rev'd on other grounds*, 666 F.581, 593 (9th Cir. 2012) ("As a general rule, classes of forty or more are considered sufficiently numerous.").

### B.    <u>Commonality</u>

A settlement class has sufficient commonality "if there are questions of fact and law which are common to the class."  Fed. R. Civ. P. 23(a)(2). An affirmative showing of at least one common question of law or fact satisfies this requirement.[10] Commonality has been found to exist when there is a common legal issue stemming from divergent factual predicates or a common nucleus of facts leading to different legal remedies. *Hanlon*, 150 F.3d at 1019.

Courts generally find commonality where "the lawsuit challenges a system-wide practice or policy that affects all of the putative class members[]" and divergent ways in which these practices affect individual Class Members, if any, do not undermine the finding of commonality.[11]  Here, the Class Members seek remedies under California's wage-and-hour laws for violations arising from common, uniform, and systematic practices which applied to all Class Members during the Settlement Class Period. *See* e.g., DuVan-Clarke Decl., ¶ 16. Accordingly, the commonality requirement is satisfied for settlement purposes.

---

[10] *Dukes v. Wal–Mart, Inc.*, 564 U.S. 338, 350 & 359 (2011); *see also Hanlon*, 150 F.3d at 1019 ("All questions of fact and law need not be common to satisfy the rule.").

[11] *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499, 504-05 (2005); *Blackie v. Barrack*, 524 F.2d 891, 902 (9th Cir. 1975), *cert denied*, 429 U.S. 816 (1976).

1

### C.   **Typicality**

The typicality requirement is satisfied where "the cause of the injury is the same," as here, and the injury claimed by the named plaintiffs are "similar" to that of unnamed class members. *Armstrong*, 275 F.3d at 868-69. They need not be "identical." *Id.* at 869. Here, Plaintiff's claims are typical of those of the Class Members, though some factual differences may exist among them, as the claims arise from the same events or course of conduct and are based upon the same legal theories. Given the structure of the Settlement, the proposed Class satisfies the typicality requirement for settlement purposes as Plaintiff's claims arise from the same factual basis and are based on the same legal theories as those applicable to all other Class Members. *Welmer v. Syntex*, 117 F.R.D. 641, 644 (N.D. Cal. 1987).

### D.   **Adequacy of Representation**

Rule 23(a)(4) requires that: (1) Class Representatives fairly and adequately protect the interests of the class, and (2) Class Counsel be qualified and competent to conduct the litigation. *In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 462 (9th Cir. 2000). The requirement "tends to merge with the commonality and typicality criteria of Rule 23(a)." [12] The inquiry turns on whether "the named plaintiffs and their counsel have any conflicts of interest with other class members" and "whether the named plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class." *Hanlon*, 150 F.3d at 1020.

### 1.   *Appointment of Class Representative.*

Plaintiff meets the requirements under Federal Rule of Civil Procedure 23(a)(4), for appointment to represent the Class. Plaintiff's claims are typical of and align with those of Class Members, which are confined to a limited group of similarly-situated employees who worked for Defendants within the State of California during the Class Period. Also, Plaintiff spent considerable time and effort

---

[12] *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n.20 (1997); *see also Manual for Complex Litig., Fourth Ed.* § 21.132 ("a settlement class must be cohesive").

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

to produce relevant documents and past employment records and provide the facts and evidence necessary to support the allegations.  DuVan-Clarke Decl., ¶ 20; Keller Decl., ¶¶ 6-8.  Plaintiff was available whenever his counsel needed him and tried to obtain and provide documents and information that would facilitate the pursuit of the class claims.  Keller Decl., ¶¶ 6-7.  As such, Plaintiff has demonstrated that he has and will continue to fairly and adequately represent the Class, and appointment of Plaintiff as Class Representative is appropriate.

### 2. *Appointment of Class Counsel.*

Class Counsel meet the requirements under Federal Rule of Civil Procedure 23(g), for appointment to represent the Class.  Class Counsel are highly experienced in employment class action and complex wage-and-hour litigation, having handled many cases before and having been appointed class counsel in many other cases. DuVan-Clarke Decl., ¶¶ 2-7.  Class Counsel's experience in litigating similar matters was integral to obtaining the Settlement. Class Counsel conducted extensive research, investigation, and analysis of the potential value of the claims.  DuVan-Clarke Decl., ¶¶ 11 & 18.  Class Counsel have committed and continue to commit significant financial and staffing resources to the pursuit of the Action.  As such, appointment of Jonathan Genish, Barbara DuVan-Clarke, and P.J. Van Ert of Blackstone Law, APC as Class Counsel is appropriate.

### E.   Predominance and Superiority

The proposed Class meets the requirements of Rule 23(b)(3) for settlement purposes because: (1) common questions predominate over questions that affect individual members and (2) class resolution is superior to other available means of adjudication.  When assessing predominance and superiority, a court may consider that the proposed class will be certified for settlement purposes only. *See Amchem Prods.,* 521 U.S. at 618-20.  Where the matter is being settled, a showing of manageability at trial is unnecessary. *Id.* at 620. At this stage, the relevant inquiry is "whether the proposed classes are sufficiently cohesive to warrant adjudication by

1  representation." *Id.* at 618-20, 623; *see also Hanlon*, 150 F.3d at 1022.

2        Here, the proposed Class is sufficiently cohesive to warrant certification. For

3  settlement purposes, common questions of fact and law affecting Class Members

4  predominate over any questions that may affect only individual members.

5  For example, Defendants' alleged failure to properly classify their "store manager"

6  employees, properly pay their employees for all hours worked and provide compliant

7  meal and rest periods are alleged to arise from Defendants' uniform policies,

8  practices, and procedures. As such, the questions of fact and law relating to these

9  issues predominate.

10        Moreover, a class resolution is superior to other available means for the fair and

11  efficient adjudication of the controversy. *See Hanlon*, 150 F.3d at 1023.

12  The superiority requirement involves a "comparative evaluation of alternative

13  mechanism of dispute resolution." *Id.* Here, the alternative method of resolution is

14  individual claims, subject to proof, for relatively small amounts of damages, which

15  would be uneconomical for potential plaintiffs. Therefore, a class resolution is

16  superior to any other available methods.

17  **VII.   ADEQUACY OF THE METHOD OF NOTICE**

18        "Adequate notice is critical to court approval of a class settlement under Rule

19  23(e)." *Hanlon,* 150 F.3d at 1025. A class notice must be "the best notice that is

20  practicable under the circumstances, including individual notice to all members who

21  can be identified through reasonable effort."  Fed. R. Civ. P. 23(c)(2)(B). A class

22  notice is adequate if it "generally describes the terms of the settlement in sufficient

23  detail to alert those with adverse viewpoints to investigate and to come forward and be

24  heard." *Churchill Vill. LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). The

25  notice must also be "neutral and objective in tone and should neither promote nor

26  discourage the assertion of claims." *Schaefer v. Overland Express Family of Funds*,

27  169 F.R.D. 124, 131 (S.D. Cal. 1996).

28        Here, the proposed Class Notice provides the best notice practicable and is

adequate. It provides information on, *inter alia*, the nature of the Action, the definition of the Class, the terms of the Settlement, the scope of the Released Claims, the binding effect of the Settlement, and the allocations for the Attorneys' Fees and Costs, Class Representative Service Enhancement, and Settlement Administration Expenses. Each Class Member's Class Notice will state his or her number of Workweeks and estimated Class Settlement Share. The Class Notice summarizes the proceedings and provides the date, time, and place of the Final Approval Hearing, and all of this information is "clearly and concisely state[d] in plain, easily understood language." Fed. R. Civ. P. 23(c)(2)(B).

All Class Members can and will be identified by Defendants through a review of their records. After receiving the Settlement Employee Data from Defendants, the Settlement Administrator will update the addresses using the U.S. Postal Service's National Change of Address Database and mail a Class Notice to each Class Member. Settlement Agreement, ¶ 74.[13]   Accordingly, the proposed Class Notice is adequate and is the best notice practicable under Rule 23(c)(2)(B).

The Class Notice also fulfills the requirement of neutrality in class notices.  The Class Notice provides a brief, neutral explanation of the case from the perspective of both parties and recognizes that the Court has not yet granted final approval of the Settlement.[14]   The Class Notice sets forth in an accurate and informative manner the procedures and deadlines governing the submission of Requests for Exclusion, Objections, and Workweeks Disputes.  The proposed Class Notice satisfies all due process requirements and complies with the standards of fairness, completeness, and neutrality.  Accordingly, the Court should approve the proposed Class Notice.

///

---

[13] *See Elsen v. Carlisle & Jacqueline*, 417 U.S. 156, 175-77 (1974) (Individual notice by mail "is clearly the 'best notice practicable' within the meaning of Rule 23(c)(2)" where "all class members [] can be identified with reasonable effort").

[14] *See Hoffmann-La Roche Inc. v. Sperling*, 493 U.S. 165, 174 (1989) ("[C]ourts must be scrupulous to respect judicial neutrality" in overseeing the class action notice process and "avoid even the appearance of judicial endorsement of the merits of the action[.]").

## VIII. <u>APPOINTMENT OF APEX AS THE SETTLEMENT ADMINISTRATOR</u>

The parties have selected Apex Class Actions, LLC ("Apex") as the Settlement Administrator to handle the notice and administration of the Settlement. Apex will mail a Class Notice in English to each Class Member; receive, review, and process Requests for Exclusion, Objections, and Workweeks Disputes; calculate estimated Class Settlement Payments; conduct tax reporting on the Class Settlement Payments, issue 1099 and W-2 IRS Forms, distribute Class Notices, calculate and distribute the Net Settlement Amount, and provide necessary reports and declarations. Settlement Agreement, ¶¶ 61, 76. Apex will also handle inquiries from Class Members regarding the Settlement and perform any other usual and customary duties for administering a class action settlement.

Settlement Administration Costs are currently estimated not to exceed Thirty Thousand Dollars ($30,000) and will be paid out of the Gross Settlement Amount subject to approval by the Court. Plaintiff respectfully requests that the Court appoint Apex as the Settlement Administrator and direct distribution of the Class Notice in the manner and in accordance with the proposed schedule, set forth in the Settlement Agreement and discussed in Section VIII, *infra*.

## IX. <u>DEADLINES FOR NOTICE AND ADMINISTRATION</u>

The Court is respectfully requested to approve the proposed deadlines for the notice and settlement administration process. Within thirty (30) calendar days following the date of entry of the Court order granting preliminary approval of the Settlement, Defendants will provide the Settlement Administrator a list of the following information for each Settlement Employee: each Settlement Employee's name, address, and employee number; Social Security number; dates of employment; the number of workweeks worked during the Class Period; the number of Pay Periods worked during the PAGA Period; and any other information needed to calculate settlement payments (collectively, "Settlement Employee Data"). Settlement

Agreement, ¶ 41.  After receiving the Settlement Employee Data, the Settlement Administrator will mail a Class Notice in English to each Class Member.  *Id.*, ¶ 76.  Prior to mailing, the Settlement Administrator will perform a search based on the National Change of Address Database for information to update and correct for any known or identifiable address changes. Any Class Notices returned to the Settlement Administrator as non-deliverable on or before the Response Deadline will be sent promptly via regular First-Class U.S. Mail to the forwarding address affixed thereto and the Settlement Administrator will indicate the date of such re-mailing on the Class Notice.  *Id.*, ¶ 76.  Requests for Exclusion, Objections, and Workweeks Disputes must be mailed to the Settlement Administrator, postmarked on or before the Response Deadline.  *Id.*, ¶¶ 63,65, and 66.

Funds represented by Settlement Payment checks returned as undeliverable and Settlement Payment checks remaining un-cashed for more than one hundred and eighty (180) calendar days after issuance will be cancelled and the funds associated with the un-cashed checks will be tendered to the California State Controller as unclaimed property in the name of the Class Member.  *Id.*, ¶ 73.

///
///
///
///
///
///
///
///
///
///
///
///

**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

## X.    <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff respectfully requests that the Court grant preliminary approval of the Settlement; certify the proposed Class for settlement purposes; appoint Jonathan Genish, Barbara DuVan-Clarke, and P.J. Van Ert of Blackstone Law, APC as Class Counsel; preliminarily approve the allocations for the Attorneys' Fees and Costs, Class Representative Service Enhancement, and Settlement Administration Expenses; appoint Plaintiff as the Class Representative; appoint Apex as the Settlement Administrator; approve and direct the mailing of the Class Notice to the Class; and schedule a Final Approval Hearing in approximately six (6) months.

Dated:  December 16, 2024                    **BLACKSTONE LAW, APC**

By:  _____
Barbara DuVan-Clarke
*Attorneys for* Plaintiff